## SHIRLEY B. PETERSON *vs.* ALAN TREMAIN.

No. 91-P-282.

Barnstable. October 19, 1992. - October 21, 1993.

Present: ARMSTRONG, JACOBS, & LAURENCE, JJ.

*Contract*, Option. *Real Property*, Option. *Rule Against Perpetuities.*

An option agreement granting the right to purchase a certain parcel of land as part of a commercial arrangement at the end of ten years or "at any time thereafter" did not violate the rule against perpetuities where the option could be interpreted, consistent with the sense of the parties' arrangement, to require its exercise within a reasonable time after the expiration of the ten-year period. [423-426]

CIVIL ACTION commenced in the Superior Court Department on June 21, 1989.

The case was heard by *Gerald F. O'Neill, Jr.*, J., on motions for summary judgment.

*Neal C. Tully* (*Mary E. O'Neal* with him) for the defendant.

*Roger A. Lane* for the plaintiff.

ARMSTRONG, J. In 1980 the plaintiff and her husband, John R. Peterson, sold the Cape Codder Hotel in Falmouth to the defendant, Tremain, conveying it to his nominee, Resorts of Distinction, Inc. Part of the transaction was to be the Petersons' house and lot next door to the hotel, but they did not wish to leave immediately. The parties discussed a preemptive option whereby, when the Petersons wished to leave, Tremain would have a right of first refusal. Instead, on December 18, 1980, they entered into a straight option agreement, whereby the Petersons were given up to ten years to remain in the house, and Tremain, after the end of that period, or at such earlier time as the Petersons should wish, could purchase the house for a price fixed in the agreement.

On November 1, 1988, Tremain informed the plaintiff (whose husband had passed away in 1986) that he intended to exercise the option effective December 18, 1990, the first day it could be exercised as of right, and on July 25, 1990, he gave formal notice purporting to do so. The plaintiff, focussing on the fact that the option agreement fixed no express limit to the period of time wherein Tremain might exercise it, assserted that the option violated the rule against perpetuities and therefore was void ab initio. She succeeded in winning a declaratory judgment to that effect, from which Tremain appeals.

The option agreement states, in pertinent part: "This [o]ption to [p]urchase may be exercised by [b]uyer on December 18, 1990, or at any time thereafter and [b]uyer's exercise of the [o]ption shall be by written notice to [s]eller on or before 120 days prior to December 18, 1990 or thereafter, following 120 days written notice by [b]uyer to [s]eller. Seller, however at any time hereafter, but prior to December 18, 1990, may require and cause, upon 120 days prior written notice to [b]uyer, the acceleration of [b]uyer's [o]ption to [p]urchase, in accordance with the terms herein contained."

An option to purchase land creates an equitable property interest subject to the rule against perpetuities. See *Winsor v. Mills*, 157 Mass. 362 (1892); *Eastman Marble Co.* v. *Vermont Marble Co.*, 236 Mass. 138 (1920); *Certified Corp.* v. *GTE Prod. Corp.*, 392 Mass. 821, 825 (1984). The common law rule against perpetuities states that a future interest is void unless "it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Certified Corp.* v. *GTE Prod. Corp.*, 392 Mass. at 823, quoting from Gray, Rule Against Perpetuities § 201, at 191 (4th ed. 1942).[1]

---

[1]Massachusetts enacted a statutory rule against perpetuities, supplanting the common law rule, effective June 30, 1990. G. L. c. 184A, as appearing in St. 1989, c. 668. However, since the option contract at issue was entered into on December 18, 1980, the common law rule applies. The new statute also contains a provision permitting reformation of an instrument which was written prior to the effective date of the statute, but where

Because the option, on its face, appears to be exercisable for an unlimited period ("at any time" after ten years) and could operate indefinitely as a restraint on alienation, the plaintff contends that it falls squarely within the policy of the rule against perpetuities and the related rule making unenforceable unduly lengthy restraints on alienation. To this the buyer responds that the option should be held to escape the ravages of the rule on either of two analyses: first, that the option can be saved under the two-contingencies rule, described below; second, that a reasonable time should be implied to limit the exercise of the option to a period less than twenty-one years.

The judge correctly rejected the defendant's contention that the option should be analyzed as one subject to two contingencies, the first being an exercise on December 18, 1990, and the second being an exercise thereafter. The defendant attempts by this analysis to bring the case within the rule, most recently applied in *Thomas* v. *Kiendzior*, 27 Mass. App. Ct. 370, 373 (1989), that an option subject to alternate conditions precedent does not fail if the condition that does in fact occur is one that necessarily will occur, if ever, within the perpetuities limitation period. The date December 18, 1990, however, does not offer a separate contingency upon which the option might be exercised but merely marks the beginning of the period in which the buyer might exercise the option without prior acceleration by the seller. In the

---

suit commenced after the effective date. G. L. c. 184A, § 6. This provision does not apply here, since suit was brought prior to June 30, 1990. See *Howson* v. *Crombie St. Congregational Church*, 412 Mass. 526, 528 (1992). Nor is this option contract affected by G. L. c. 184A, § 1, as in effect prior to St. 1989, c. 668, § 1. That section provided a limited version of the "second look," or "wait and see" principle, which saved from invalidity certain interests which actually vest within the perpetuities period, although they need not do so by their terms. See *Warner* v. *Whitman*, 353 Mass. 468, 472 (1968); *Foley* v. *Evans*, 30 Mass. App. Ct. 509, 512 (1991). The statute applied, however, only to interests which would by their terms "take effect at or after the termination of one or more life estates [or] lives," and therefore does not apply to the option in this case. See Leach, Perpetuities Legislation, Massachusetts Style, 67 Harv. L. Rev. 1349, 1366 (1954).

case of a contract subject to two interpretations, we prefer that which will avoid perpetuities problems, see *Childs* v. *Sherman*, 351 Mass. 450, 455 (1966), but there is no ambiguity in this contract. The time-splitting approach suggested in *Continental Cablevision, Inc.* v. *United Bdcst. Co.*, 873 F.2d 717, 723, 726-727 (4th Cir. 1989) (possible to treat an option with no time limit as if it were two options, the first for twenty-one years, the second for an indefinite period after twenty-one years) has, as the concurring opinion in that case pointed out (at 731), no basis in Massachusetts law.

More plausible and, we think, ultimately determinative is the contention that a reasonable time should be imputed to limit the exercise of the option. The option in this case was an adjunct to a commercial arrangement, the sale of the Cape Codder Hotel in Falmouth, and it is particularly in the area of such commercial arrangements that our courts, in order to carry out the broad policy favoring the enforcement of contracts, *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 634 (1985), have been willing to impute a reasonable-time limitation where the contract documents fail to state a period. *Childs* v. *Sherman*, 351 Mass. at 454-455. Where the parties have explicitly fixed a period of time longer than that permitted by the rule, a reasonable time cannot be implied. See *Certified Corp.* v. *GTE Prod. Corp.*, *supra* (where parties fixed a twenty-five year period, option violated rule). Use of a general term, however, such as "any time," does not necessarily preclude the implication of a reasonable time if such a construction is consistent with the sense of the parties' arrangement. See, e.g., *Starkweather* v. *Gleason*, 221 Mass. 552, 553 (1915).

The sense of the parties' arrangement here suggests that they intended that the option be exercised within a reasonable time after ten years, if the Petersons had not previously accelerated the option. The agreement bespeaks a focus on the initial ten-year period, and the gist of the arrangement was simply that sale during those years was to depend on the Petersons' consent; after ten years, Tremain was free to buy them out. There is nothing in the arrangement to indicate

that the parties contemplated the option remaining open for a substantial period beyond the ten years grace. Delaying the unilateral exercise of the option for ten years is not inconsistent with an expectation that it would not remain open indefinitely thereafter but rather would expire if not exercised within a reasonable time after it became exerciseable of right. A contrary interpretation is disfavored because it would create a perpetuities problem unnecessarily, upsetting one term of a larger commercial arrangement, and enabling the Petersons to escape the enforcement of a contract they entered into freely and knowledgeably. We therefore interpret the option to require its exercise within a reasonable time after the expiration of the ten-year grace period. It is unnecessary to determine the length of that reasonable period in light of the fact that the buyer has in fact exercised it at his earliest opportunity.[2]

The judgment is reversed, and a new judgment is to be entered declaring that the option is valid and ordering specific performance of the option agreement.

*So ordered.*

---

[2]We note that the perpetuities problem encountered in this case is resolved by statute, as to options entered into after June 30, 1990. See G. L. c. 184A, § 5(*a*), as appearing in St. 1989, c. 668, § 1, providing that an option to purchase land "becomes invalid if it is not exercised within thirty years after its creation."